Donald R. SHELLHOUSE, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CIV.A.04–G–1843–NE.

United States District Court,
N.D. Alabama,
Northeastern Division.

Oct. 26, 2005.

Carl E. Chamblee, Sr., Attorney at Law, Birmingham, AL, for Plaintiff.

Alice H. Martin, Winfield J. Sinclair, US Attorney's Office, Birmingham, AL, Marilynn Kelm, Office of General Counsel, Atlanta, GA, for Defendant.

### MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Donald R. Shellhouse, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his available administrative remedies. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

### Facts

The Plaintiff, Donald R. Shellhouse, was involved in a motor vehicle accident on March 4, 1996. Mr. Shellhouse filed his application for Social Security benefits on August 6, 1999, alleging an onset date of March 4, 1996. He was forty-three years old at the alleged onset date, forty-six years old at the time of his application, and is currently fifty-two years old. He has a high school education. His past relevant work experience as a drywall installer, commercial painter, and carpenter is classified as semi-skilled. The Plaintiff claimed disability due to a ruptured cervical disk with nerve damage to the neck and arm, cervical disk fusion, constant pain, and loss of feeling of the left arm and hand.

## Procedural History

This case is before this court for the second time. In the initial case, after denial of benefits by the ALJ, proper exhaustion of administrative remedies, and appeal to this court, this case was remanded by this court to the Commissioner on November 18, 2002, for proper consideration of the effect of plaintiff's obesity **in conjunction with his other impairments, as required by law.** R. 501–06. The Commissioner vacated the original hearing decision and remanded the case to ALJ Robert Hodges, the ALJ who presided over the case initially, for these further proceedings.

On February 11, 2003, the ALJ sent an *ex parte* letter requesting the medical opinion of Dr. Lester Hibbett. The questions posed to Dr. Hibbett were:

1. What work-related physical limitations can be reasonably expected to be present due *only* to the claimant's obesity?

2. Does the claimant's *obesity* preclude any of the work-related abilities expressed in the following residual functional capacity? [Regulations' definition of sedentary work then included].

R. 533 (emphasis added). Neither Plaintiff nor his counsel was ever advised of the existence of this letter before the hearing nor before the issuance of the ALJ's opinion. R. 418–19.

On April 29, 2003, a second hearing was held at which the testimony of the Plaintiff, his mother, and a vocational expert was taken. On July 18, 2003, the ALJ entered an opinion finding the Plaintiff disabled beginning September 12, 2002, and, thus, meeting the disability requirement for Supplemental Security Income from that date.

Plaintiff's insured status for Disability Insurance Benefits expired on December 31, 1998. Accordingly, under the ALJ's decision, the Plaintiff was not eligible for DIB. Plaintiff sought review by the Appeals Council, but the Appeals Council declined to "assume to jurisdiction."[1] *See,* 20 CFR § 404.984. Thus, the decision of the ALJ became the final decision of the Commissioner on May 5, 2004. R. 410.

## Standard of Review

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end, this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239. Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

## Statutory and Regulatory Framework

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled as that term is defined by the Social; Security Act and the Regulations promulgated thereunder. The Regulations define *disabled* as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

---

1. As required by 20 CFR § 404.984, the Appeals Council issued a written notice addressing the exceptions to the ALJ's opinion filed by the Plaintiff and explained why it found no change in the ALJ's opinion was appropriate. R. 409–412. Because the Appeals Council declined to assume jurisdiction, any "findings" in that notice have no legal weight.

can be expected to last for a continuous period of not less than twelve months ...." 20 CFR 404.1505(a). For the purposes of establishing entitlement to disability benefits, *physical or mental impairment* is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 CFR 404.1508.

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 CFR 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether [he] has a severe impairment;

(3) whether [his] impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform [his] past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, at 477; *accord, Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995). The Commissioner also bears the burden of showing that such work exists in the national economy in significant numbers. *Id.*

### Findings of the ALJ

In his second opinion which is now before the court, the ALJ concluded that Plaintiff's impairments-obesity,[2] cervical degenerative disc disease, status post cervical fusion, status post carpal tunnel releases bilaterally, lumbar degenerative disc disease with spondylolisthesis, status post lumbar fusion, hypertension, osteoarthritis of the knees, myoclonal gammoplasty, and non-insulin-dependent diabetes-were severe but did not meet or equal a listed impairment.

The ALJ found that the plaintiff was unable to perform his past relevant work and had no transferable skills within his residual functional capacity. The ALJ found the Plaintiff's allegations regarding his ability to work during the period from March 4, 1996, to September 11, 2002, not to be fully credible. R. 432. During this period the ALJ found that the Plaintiff had the residual functional capacity to perform a limited range of sedentary work with significant non-exertional impairments. He further found that the Plaintiff could make successful vocational adjustment to other unskilled sedentary work up until September 11, 2002. He further found that jobs of which the Plaintiff was capable of performing existed in significant numbers in the national economy. Accordingly, the ALJ found the Plaintiff not to be disabled during this period.

The ALJ found the Plaintiff's allegations regarding his ability to work during the period from September 12, 2002, forward to be generally credible. R. 430. He also found that the addition of the impairment of back pain as shown by the records of

---

2. The ALJ found in his first opinion that "[t]he effects of claimant's obesity would impose significant vocationally relevant functional limitations and is therefore found to be severe." R. 485–86.

Dr. Harris beginning September 12, 2002, provided the necessary exacerbation of impairments to meet the threshold of disability. Accordingly, he found the Plaintiff to be disabled as of this date and, thus, meeting the disability requirement for Supplemental Security Income benefits.

### Findings and Decision of the Court

The court has carefully reviewed the record and finds that the decision of the ALJ must be remanded for further development of the record. Under the law, the administrative law judge must develop a full and fair record. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997).

■■■ The ALJ erred as a matter of law to properly consider the Plaintiff's obesity in combination with the Plaintiff's impairments for the period prior to September 12, 2002, and more particularly for the period before December 31, 1998. The first answer provided by Dr. Hibbett in his letter specifically addresses physical limitations "expected to be present due *only* to the claimant's obesity." R. 532–33. The second answer addresses the effects of the Plaintiff's obesity on the residual functional capacity description provided by the ALJ. Nowhere is the effect of the Plaintiff's obesity analyzed in combination with his other impairments. When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled. *Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir.1984). The ALJ failed to meet this legal standard and failed to obey this court's order on this point.

■■■ Further, the ALJ violated Plaintiff's due process rights by failing to give him notice of Dr. Hibbett's report upon which he relied in part for his decision.[3] "Due process is violated when a claimant is denied the opportunity to subpoena and cross-examine those who submit medical reports. See *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Cowart v. Schweiker,* 662 F.2d 731 (11th Cir.1981); *Lonzollo v. Weinberger,* 534 F.2d 712 (7th Cir.1976)." *Hudson v. Heckler,* 755 F.2d 781, (11th Cir.1985). This failure is an error of law.

Mr. Shellhouse underwent cervical disk fusion surgery on January 8, 1997. His June 5, 1997, post-operative physical therapy discharge report stated that he could engage in three to four hours of light activity (not work) a day and fifteen to thirty minutes of overhead activities a day. No other medical report shows an increase in this time assessment. The report also notes continued shooting pains and restricted range of motion. R. 290. In regular visits to Dr. Charles Clark, Mr. Shellhouse sought relief for continuing pain in his neck and shoulder, as well as numbness in his hand. Dr. Clark is a neurosurgeon. He tried some pain relief modalities with Mr. Shellhouse including physical therapy, medication, and TENS unit stimulation. Ongoing care, however, is not the surgeon's typical role. On October 30, 1997, Dr. Clark referred Mr. Shellhouse to Dr. Barton Huddleston for ongoing care because "I really do not have anything to

---

**3.** Although of no legal weight, the Appeals Council also found that the proffer was not correctly made and was error by the ALJ. R. 410.

offer him from a surgical standpoint." R. 307.

The Record reveals that during the period between August 11, 1998, and January 5, 1999, Mr. Shellhouse's treating physician, Dr. Barton Huddleston saw him on a regular basis. Mr. Shellhouse's residual neck and shoulder pain and hand pain and numbness were subjects of every visit. He received pain medications and other treatments. His neck, shoulder, and related myofascial pain were deemed chronic. His physical therapy discharge report of February 1, 1999, listed his pain level as 7–8/10 on that day and little to no improvement on all but two plan goals.

Mr. Shellhouse returned to Dr. Clark for a carpal tunnel release on June 14, 2001. He returned again on September 12, 2002, with complaints of lower back pain. Dr. Clark diagnosed lumbar stenosis and spondylolisthesis. The ALJ notes that Mr. Shellhouse had not sought treatment from Dr. Clark since the time of his carpal tunnel surgery. Not odd, considering Dr. Clark is a surgeon-surgery is not typically a treatment of first resort. He had previously been diagnosed with L5–S1 radiculopathy and degenerative disk disease by Dr. Mark Addison, who treated him from January 18, 2002, through February 21, 2003. Dr. Addison noted on January 18, 2002, that Mr. Shellhouse had back pain radiating into his leg. Mr. Shellhouse had epidural injections seeking pain relief and ultimately had lumbar surgery on November 8, 2002. The ALJ's finding that Mr. Shellhouse "first began complaining of low back pain in a visit of September 12, 2002 [to Dr. Clark]" is a patent error of fact.

▮ According to the ALJ, the Plaintiff's credibility regarding his "ability to work" (i.e., pain, fatigue, and other subjective complaints) underwent a sudden improvement on September 12, 2002. This finding is not based on substantial evidence, and the ALJ failed to articulate with specificity his rationale for his odd, shifting credibility assessment. Under the law, "[e]xplicit credibility findings are 'necessary and crucial where subjective pain is an issue.' *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir.1982)." *Foote v. Chater*, 67 F.3d 1553, 1560–62 (11th Cir.1995). The ALJ "must articulate specific reasons for questioning the claimant's credibility." *Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir.1992).

Accordingly, the decision of the Commissioner will be reversed and the case remanded for further proceedings in conformity with the terms of this opinion. Given the length of time this case has been in the system, the court will also order that all supplemental proceedings be completed within ninety days of the entry of this Opinion and Order. The court will also order that the hearing be held before an ALJ other than Robert Hodges. An order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

### *FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, the court

ORDERS, ADJUDGES and DECREES that the decision of the Commissioner of the Social Security Administration be and it hereby is REVERSED, and the case is REMANDED to the Commissioner pursuant to Sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the memorandum opinion entered contemporaneously herewith. This remand is not pursuant to Sentence six of 42 U.S.C. § 405(g).

1142

The court FURTHER ORDERS that all further proceedings be completed within ninety days of the entry of this ORDER.

The court FURTHER ORDERS that an Administrative Law Judge other than Robert Hodges be assigned to any proceedings requiring the services of an Administrative Law Judge.

Should this remand result in the award of benefits, plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*